## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

VERONICA DEL PILAR RUIZ,
and SAGAR DALIYA, Individually
and on behalf of all others similarly
situated who consent to their inclusion;

     Plaintiffs,

 v.

CIRCLE K STORES, INC.,
a foreign corporation, MAC'S
CONVENIENCE STORES, LLC,
a foreign corporation, d/b/a Circle K
ALIMENTATION COUCHE-TARD INC.
a foreign corporation, d/b/a Circle K and
MID-ATLANTIC CONVENIENCE STORES,
LLC, a foreign corporation d/b/a Circle K,

     Defendants.

CASE NO.:

COLLECTIVE ACTION
REPRESENTATION

## COLLECTIVE ACTION COMPLAINT AND
## DEMAND FOR JURY TRIAL

Plaintiffs, VERONICA DEL PILAR RUIZ ("Ruiz") and SAGAR DALIYA ("Daliya") (collectively "Plaintiffs"), individually and on behalf of all others similarly situated who consent to their inclusion in this national class action, bring this lawsuit against the above captioned Defendants, CIRCLE K STORES, INC. ("Circle K"), MAC'S CONVENIENCE STORES, LLC., ("Mac's") d/b/a Circle K, MID-ATLANTIC CONVENIENCE STORES, LLC ("MACS") d/b/a Circle K and ALIMENTATION COUCHE-TARD INC. ("Couche-Tard") d/b/a Circle K (hereinafter collectively referred to as "Defendants") for violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* (the "FLSA") for failure to pay overtime compensation at a rate of 1.5 times her regular rate of pay for all hours worked over forty hours a week.

Feldman Morgado, PA | 501 N. Reo Street | Tampa | Florida | 33609 | PH 813-639-9366

## INTRODUCTION

1.      The Fair Labor Standards Act is our nation's foremost wage law.  The overtime requirements of the Fair Labor Standards Act ("FLSA") were designed to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers..." 29 U.S.C. §202(a).  To achieve its goals, the FLSA sets minimum wage and overtime pay requirements for covered employers. 29 U.S.C. §§206(a) & 207(a).  It requires minimum wage and overtime pay for certain non-exempt employees.  29 U.S.C. Sec. 213.

2.      Plaintiff, VERONICA DEL PILAR RUIZ, worked for Defendants as a store manager for approximately ten (10) years until her resignation in February 2014.  Ruiz worked at numerous Circle K stores in the Naples, Florida area during the last three (3) years she served as a "Store Manager."

3.      Plaintiff, SAGAR DALIYA, worked for Defendants as a store manager for approximately one (1) year until his resignation in March of 2014.  Daliya worked at a Circle K store near Lehigh Acres, Florida as a "Store Manager."

4.       Plaintiffs, like their fellow Store Managers and members of this putative Class working in various stores owned and operated by Defendants across the nation, were paid on a salary basis and improperly and willfully misclassified by Defendants as exempt employees under the FLSA.  Defendants therefore failed to compensate Plaintiffs and the putative Class of store managers for overtime hours worked for Defendants in excess of forty (40) hours per workweek in violation of the FLSA.

5.      Further, Plaintiffs, like their fellow Store Managers in Defendants' stores across the nation and members of the Class, in the past and still to this day, were/are systematically denied any overtime pay for hours they consistently worked in excess of forty (40) hours on behalf of Defendants.

6.      Accordingly, Plaintiffs, individually, and on behalf of all others similarly

Feldman Morgado, PA | 501 N. Reo Street | Tampa | Florida | 33609 | PH 813-639-9366

situated who consent to their inclusion in this collective action, sue Defendants, Circle K, Couche-Tard, MACS and Mac's for violations of the Fair Labor Standards Act for: (1) failing to pay the Plaintiffs (and others similarly situated) overtime compensation and (2) failing to maintain and preserve accurate and true records of all hours worked.

## CLASS DEFINITION AND RELIEF SOUGHT

7. This collective action is to recover from Defendants overtime compensation, liquidated damages, prejudgment interest, and the costs and reasonable attorney's fees under 29 U.S.C. §216(b) on behalf of the Plaintiffs and all similarly situated persons composed of:

> All Circle K Store Managers Currently employed or formerly employed within the 3 year period preceding the filing of this lawsuit in the U.S. and its territories who elect to opt into this action pursuant to FLSA, 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

8. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, because this action involves a federal question under the Fair Labor Standards Act, 29 U.S.C., Sections 201-219, inclusive.

9. This Court has personal jurisdiction over this action because the Defendants are engaged in business within the state of Florida and within counties lying within the jurisdiction of this Court.

10. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. 1391(b) because acts complained of herein took place in this District.

## THE PARTIES

## VERONICA RUIZ

11. At all times relevant to this action, Representative Plaintiff Veronica Ruiz, resided in Collier County, Florida.

12. At all times relevant to this action, Plaintiff Ruiz worked for Defendants, Circle K and Couche-Tard at one of several of their store locations in Collier County, Florida.

Feldman Morgado, PA | 501 N. Reo Street | Tampa | Florida | 33609 | PH 813-639-9366

13.     At all times relevant to this action, Ruiz, and all other members of the proposed FLSA collective action, were employees of Defendants within the meaning of 29 U.S.C. § 203(e)(1).

14.     Ruiz worked as a Store Manager during her employment with Defendants for approximately the past ten (10) years until her resignation in or about February 2014.

15.     For purposes of the collective action, Ruiz consents in writing to be a party to this action pursuant to 29 U.S.C. § 216(b).

16.     At all times relevant to this action, Defendants employed Ruiz and all other Store Managers of the proposed FLSA collective action within the meaning of 29 U.S.C. § 203(g).

17.     Ruiz is willing and able to serve as class representative and carry out all responsibilities to represent the interests of the putative class of store managers.

## **SAGAR DALIYA**

18.     At all times relevant to this action, Representative Plaintiff Sagar Daliya, resided in Lee County, Florida.

19.     At all times relevant to this action, Plaintiff Daliya worked for Defendants, Circle K and Couche-Tard at one of several of their store locations in Lee County, Florida.

20.     At all times relevant to this action, Daliya, and all other members of the proposed FLSA collective action, were employees of Defendants within the meaning of 29 U.S.C. § 203(e)(1).

21.     Daliya worked as a Store Manager during his employment with Defendants for approximately one (1) year until his resignation in or about March of 2014.

22.     For purposes of the collective action, Daliya consents in writing to be a party to this action pursuant to 29 U.S.C. § 216(b).

Feldman Morgado, PA | 501 N. Reo Street | Tampa | Florida | 33609 | PH 813-639-9366

23.    At all times relevant to this action, Defendants employed Daliya and all other Store Managers of the proposed FLSA collective action within the meaning of 29 U.S.C. § 203(g).

24.    Daliya is willing and able to serve as class representative and carry out all responsibilities to represent the interests of the putative class of store managers.

## CIRCLE K

25.    Defendant Circle K is a for-profit corporation, which owns and operates convenience stores across the United States, with its principle place of business at 1130 W. Warner Rd., Building B, Tempe, Arizona 85284.

26.    Circle K is one of the nation's leading convenience store chains, with over 3,300 Circle K stores nationally.

27.    Based upon information and belief Circle K employs thousands of Store Managers throughout the United States.

28.    Circle K conducts substantial business in the state of Florida and throughout the country subjecting it to enterprise coverage under the FLSA.

29.    Circle K had more than $500,000 in revenues for the years of 2010, 2011, 2012, and 2013.

30.    At all relevant times, Circle K has been and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of FLSA 29 U.S.C. §§ 206(a) and 207(a).

31.    At all times relevant to this action, Circle K was a joint employer of Plaintiffs, opt-in Plaintiffs and/or members of the putative class as Circle K:

    a.    Had control over Store Managers;

    b.    Had both direct and indirect supervision over Store Managers;

Feldman Morgado, PA | 501 N. Reo Street | Tampa | Florida | 33609 | PH 813-639-9366

c.  Had the right, directly and/or indirectly to hire, fire, or modify the Store Managers' employment conditions;

d.  Had the power to control the pay rates and/or methods of payment to the Store Managers;

e.  Did the preparation of payroll and payment of the Store Managers' wages;

f.  Had ownership of the facilities where the Store Managers work occurred;

g.  Circle K Store Managers performance of a line-job was integral to the Defendants business;

h.  Invested heavily in equipment and facilities;

i.  Controlled the training of all Store Managers;

j.  Was believed by Plaintiffs, opt-in Plaintiffs and/or members of the putative class to be their employer regardless of any other entity also identified on their paychecks;

k.  Conducted regional Store Manager meetings;

l.  Had a uniform and standardized pay and bonus structure for all Store Managers; and

m.  Controlled, supervised and monitored the Circle K stores, including those which were licensed to, owned and/or operated by MACS and MAC'S as if one single business enterprise;

32.  Circle K is subject to the FLSA as a matter of law.

33.  At all times relevant Defendants were joint employers of Plaintiffs, opt-in Plaintiffs and/or members of the putative class.

Feldman Morgado, PA | 501 N. Reo Street | Tampa | Florida | 33609 | PH 813-639-9366

## MAC'S

34.     Defendant Mac's is a for-profit corporation, which owns and operates convenience stores across the United States, with its principle place of business in Columbus, Indiana.

35.     Mac's is one of the nation's leading convenience store chains, operating and having an interest in approximately five hundred (500) to one thousand (1,000) Circle K stores nationally.

36.     Based upon information and belief Mac's employs five hundred (500) to one thousand (1,000) Circle K Store Managers throughout the United States.

37.     Mac's conducts substantial business in the state of Florida and throughout the country subjecting it to enterprise coverage under the FLSA and jurisdiction of this court.

38.     Upon information and belief, Mac's had more than $500,000 in revenues for the years of 2010, 2011, 2012, and 2013.

39.     At all relevant times, Mac's has been and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of FLSA 29 U.S.C. §§ 206(a) and 207(a).

40.     Mac's is subject to the FLSA as a matter of law.

41.     At all times relevant Defendants were joint employers of Plaintiffs, opt-in Plaintiffs and/or members of the putative class.

42.     At all times relevant to this action, upon information and belief Mac's was a joint employer of Plaintiffs, opt-in Plaintiffs and/or members of the putative class as:

    a.   Mac's operated all of their stores as Circle K's;

    b.   Store Managers were trained by Circle K Stores Inc. employees;

Feldman Morgado, PA | 501 N. Reo Street | Tampa | Florida | 33609 | PH 813-639-9366

c. Circle K Stores Inc.'s Market Managers had the right, directly and/or indirectly to hire, fire, or modify the Store Managers' employment conditions;

d. Circle K Stores, Inc.'s Market Managers had the power to control the pay rates and/or methods of payment to the Store Managers;

e. Circle K Stores Inc.'s Market Managers did the preparation of payroll and payment of the Store Managers' wages;

f. Circle K was believed by Plaintiffs, opt-in Plaintiffs and/or members of the putative class to be their employer regardless of whether their paychecks identified Mac's and/or any other entity as being involved in the payment of wages;

g. Store Managers held themselves out to the public as Circle K employees, with uniforms, policies and signs;

h. Regional Store Manager meetings were conducted as Circle K Store Managers alongside Circle K Stores, Inc.'s Store Managers; and

i. Mac's had standardized Circle K pay and bonus structures and policies identical to those utilized by Circle K Stores, Inc.'s, for all its Circle K Store Managers.

## COUCHE-TARD

**43.** Defendant Couche-Tard is a for-profit corporation, which owns and operates convenience stores across the United States, with its principle place of business in Quebec, Canada.

**44.** Upon information and belief, Couche-Tard wholly owns and operates Circle K Stores, Inc. and Mac's Convenience Stores, Inc.

**45.** Upon information and belief, Couche-Tard has a licensing agreement with Mid-Atlantic Convenience Stores, LLC to operate Circle K stores in a uniform manner according to

Feldman Morgado, PA | 501 N. Reo Street | Tampa | Florida | 33609 | PH 813-639-9366

mandatory Circle K standards, policies and procedures as well as identical pay and compensation practices.

46.     Couche-Tard is one of the nation's leading convenience store chains, with approximately 4,000 stores nationally, including all the stores under its wholly owned subsidiary, Circle K Stores, Inc.

47.     Based upon information and belief Couche-Tard employs thousands of Store Managers throughout the United States.

48.     Couche-Tard conducts substantial business in the state of Florida and throughout the country subjecting it to enterprise coverage under the FLSA

49.     Couche-Tard had more than $500,000 in revenues for the years of 2010, 2011, 2012, and 2013.

50.     At all relevant times, Couche-Tard has been and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of FLSA 29 U.S.C. §§ 206(a) and 207(a).

51.     Couche-Tard is subject to the FLSA as a matter of law.

52.     At all times relevant Defendants were joint employers of Plaintiffs, opt-in Plaintiffs and/or members of the putative class.

53.     At all times relevant to this action, upon information and belief Couche-Tard was a joint employer of Plaintiffs, opt-in Plaintiffs and/or members of the putative class, as Couche-Tard:

   a.   "[H]as over 4,275 stores in the United States, which are located in thirty nine (39) states and the District of Columbia.  The stores are primarily operated under the Circle K banner, *but also includes the stores operated by Defendants MAC'S and MACS;*

Feldman Morgado, PA | 501 N. Reo Street | Tampa | Florida | 33609 | PH 813-639-9366

b.  Has eight geographic business units of Circle K Stores spread out throughout the United States;

c.  Wholly owns its subsidiary Circle K Stores, Inc;

d.  "In the United States, it is the largest independent convenience store operator in terms of number of company-operated stores;

e.  Employs more than "60,000 people … throughout Couche-Tard's network and its service office in North America."    Of those 60,000 employees an unidentified number of those employees are Circle K Stores, Inc.'s employees;

f.  Operates approximately 4,200 stores under the Circle K banner in ten (10) other countries worldwide utilizing various licensing and related agreements;

g.  Wholly owns its subsidiary Mac's Convenience Stores, LLC, which operates Circle K Stores throughout the Midwest Region; and

h.  Wholly owns its subsidiary Mid-Atlantic Convenience Stores, LLC, which operates Circle K Stores throughout the Mid-Atlantic Region during the putative class members' employment before being bought by Sunoco, Inc. in October of 2013.

## **MACS**

54.  Defendant MACS is a for-profit corporation, which owns and operates convenience stores across the United States, with its principle place of business in Richmond, Virginia.

55.  MACS is one of the nation's leading convenience store chains, with approximately three hundred (300) stores nationally.

56.  Based upon information and belief MACS employs thousands of Store Managers throughout the United States.

Feldman Morgado, PA | 501 N. Reo Street | Tampa | Florida | 33609 | PH 813-639-9366

57.     MACS conducts substantial business in the state of Florida and throughout the country subjecting it to enterprise coverage under the FLSA.

58.     MACS had more than $500,000 in revenues for the years of 2010, 2011, 2012, and 2013.

59.     At all relevant times, MACS has been and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of FLSA 29 U.S.C. §§ 206(a) and 207(a).

60.     MACS is subject to the FLSA as a matter of law.

61.     At all times relevant Defendants were joint employers of Plaintiffs, opt-in Plaintiffs and/or members of the putative class.

62.     At all times relevant to this action, based upon information and belief MACS was a joint employer of members of the putative class as MACS:

    a.   Operated all of their stores as Circle K's;

    b.   Had Store Managers trained by Circle K Stores, Inc.'s employees;

    c.   Was in a partnership with Circle K;

    d.   Had a licensing agreement with Circle K to brand all seventy one (71) company-owned retail locations as Circle K's;

    e.   Granted the right of Circle K Stores, Inc.'s Market Managers to directly and/or indirectly hire, fire or modify the Store Managers' employment conditions;

    f.   Granted the power of Circle K Stores, Inc.'s Market Managers to control the pay rates and/or methods of payment to the Store Managers;

Feldman Morgado, PA | 501 N. Reo Street | Tampa | Florida | 33609 | PH 813-639-9366

g.  Had Circle K Stores Inc.'s Market Managers prepare the payroll and payment of the Store Managers' wages;

h.  Store Managers held themselves out to the public as Circle K employees;

i.  Conducted regional Store Manager meetings as Circle K Store Managers; and

j.  Had a uniform and standardized Circle K pay and bonus structure for all Store Managers the same as all other Circle K Stores, Inc.'s stores.

63.  In or about March of 2013, as rebranding of MACS' stores to Circle K was almost complete, MACS' Senior Vice President of Marketing, Derek Gaskins, considered the licensing agreement to make MACS part of the Circle K family.

64.  In or about October of 2013, MACS was bought by Sunoco, Inc.

65.  Prior to the sale MACS was considered a "brand developer" for Circle K.

## <u>GENERAL ALLEGATIONS</u>

66.  Based upon information and belief, all or substantially all stores across the United States operate with the same training models for employees, career paths, job titles, hierarchy, and employee policies and procedures.

67.  Based upon information and belief, all Store Managers are supervised by District Managers, also referred to as Market Managers, who oversee the management of several stores at a time and whose job duties include insuring that each store is presented to the public, managed and run according to uniform Circle K policies, procedures and pay practices as created by Defendants Couche-Tard and Circle K Stores Inc.

68.  Based upon information and belief, the Store Manager Position job description is the same for all states across the nation, regardless of which Defendant actually operates and/or has a controlling interest in the store.

69.  No college education is required for the Store Manager Position.

Feldman Morgado, PA | 501 N. Reo Street | Tampa | Florida | 33609 | PH 813-639-9366

70.     Plaintiffs, opt-in Plaintiffs, and/or members of the putative class worked mandatory overtime schedules as required by Defendants according to a uniform and standardized policy.  Each store manager routinely worked substantial overtime hours on a regular and essentially weekly basis on behalf of Defendants in the performance of their duties as Store Managers.

71.     The Defendants did not track all the hours of Store Managers.

72.     Defendants had a mandatory policy that Store Managers were to handle any shift of a store employee who did not show up or called off from work so as to avoid overtime wages for any hourly employee.

73.     Defendants maintained a labor policy for all stores, which precluded and/or strongly discouraged the incurrence of overtime wages for store employees throughout most if not all of the entire applicable three (3) year period preceding the filing of this complaint.

74.     Plaintiffs, opt-in Plaintiffs and/or members of the putative class, were employees of Defendants within the meaning of 29 U.S.C. § 203(e)(1).

75.     Plaintiffs, opt-in Plaintiffs, and/or members of the putative class were misclassified by Defendants as exempt employees who were and/or are not entitled to receive overtime compensation under the FLSA for hours they work on behalf of Defendants in excess of forty (40) hours per week.

76.     Despite Defendants' classification of its Store Managers, such as Plaintiffs, opt-in Plaintiffs and/or members of the putative class, as being exempt from the overtime protections of the FLSA, the primary duties, responsibilities and actual circumstances of such Store Managers' work environment, as well as the character of their jobs as a whole, dictate that they were and/or are not exempt under the FLSA.   The reality was and is that Plaintiffs', opt-in Plaintiffs' and/or

Feldman Morgado, PA | 501 N. Reo Street | Tampa | Florida | 33609 | PH 813-639-9366

members of the putative class' primary job duties were not management of the store as executives as those terms are defined pursuant to the FLSA.

77.     As per Defendants own policies, it deems the store manager position nationally as only an executive exempt position in company documents, and does not deem them administratively exempt employees.

78.     During their employment with Defendants, Plaintiffs', opt-in Plaintiffs' and/or members of the putative class' primary job duties were merely to be a supervising worker and store clerk.  Plaintiffs, opt-in Plaintiffs and/or members of the putative class would often refer to themselves as "glorified cashiers," based upon the inordinate amount of time that they spent performing the duty of a cashier in a given shift, or as "glorified clerks" as the great majority of their time was spent performing the same job duties of store clerks as compared to any duties which are properly deemed to be management of the store as defined by the CFR and the FLSA.

79.     Plaintiffs', opt-in Plaintiffs' and/or members of the putative class' job duties also included, among other things, unloading trucks, stocking shelves, cleaning restrooms and other parts of the store location in which they worked, painting, performing clerical work related to payroll and other pre-established form duties and any other task assigned or directed to do by the District Manager.  In fact, the great majority of Plaintiffs', opt-in Plaintiffs' and/or members of the putative class' time working for Defendants are and/or was spent performing such menial tasks and/or job duties.

80.     Plaintiffs, opt-in Plaintiffs, and/or members of the putative class did not have the authority to hire or fire employees, nor could they set pay, provide pay raises to employees nor promote employees nor make any other type of personnel decision; only their superiors or Market and District Managers had such authority to do so.

Feldman Morgado, PA | 501 N. Reo Street | Tampa | Florida | 33609 | PH 813-639-9366

81.     Plaintiffs, opt-in Plaintiffs and/or members of the putative class, like all other Store Managers, were told that the position required fifty (50) hours per week minimum, and to work shifts of either 7a.m. until 5 p.m., and 6 a.m. until 4p.m.

82.     Plaintiffs, opt-in Plaintiffs and/or members of the putative class were often unable to take lunches or breaks because of the limited labor permitted by Defendants.  Plaintiffs, opt-in Plaintiffs and/or members of the putative class were sometimes working alone in the store for several hours.

83.     Plaintiff primarily worked with no more than one other employee at any given time.

84.     Plaintiffs, opt-in Plaintiffs, and/or members of the putative class needed authority and permission from District or Market Managers to leave the store even if working greater than their scheduled fifty (50) hours, which was the norm.

85.     Plaintiffs, opt-in Plaintiffs and/or members of the putative class did not have the discretion to offer prospective employees more than minimum wage or to use their discretion to set the pay of a new hire.  Plaintiffs', opt-in Plaintiffs', and/or members of the putative class' opinions on the pay for prospective new employees were not given any real weight.

86.     Store Managers conducted the initial interview of a candidate, and thereafter handed the person off to the Market and District Managers for second and possibly third interviews when deemed warranted.  Plaintiffs, opt-in Plaintiffs and/or members of the putative class were not involved in the decision to hire any prospective subordinate employee or applicant, as such, decisions were exclusively made by the District and/or Market Manager.

Feldman Morgado, PA | 501 N. Reo Street | Tampa | Florida | 33609 | PH 813-639-9366

87.     Store Managers could not make the decision to terminate any employee, or to discipline an employee other than to prepare a written disciplinary form.   Decisions on suspending and firing any employee were made by the District and/or Market Managers.

88.     Plaintiffs', opt-in Plaintiffs', and/or members of the putative class' primary job duties did not involve the exercise of discretion and/or independent judgment, nor did they enjoy the authority to make independent decisions on matters that affected the business as a whole or any significant manner.   Their respective job duties did not include engaging in any type of analysis, but instead they simply followed and/or utilized automated or pre-established procedures or formats in performing any job duties that did not involve menial tasks.

89.     Plaintiffs, opt-in Plaintiffs, and/or members of the putative class were paid weekly salaries and were scheduled to work a mandatory minimum of approximately fifty (50) to fifty six (56) hours per week.   Each Store Manager was also required to have a set minimum schedule according to policies instituted and monitored by the Defendants in a uniform manner.

90.     Plaintiffs, opt-in Plaintiffs and/or members of the putative class consistently worked greater than their schedules, regularly working up to sixty (60) or more  hours per week or more during the course of her employment as store manager.   Plaintiffs, opt-in Plaintiffs and/or members of the putative class, according to Defendants' policies for each store, were and/or are usually the first employees required to fill in for other subordinate employees who were out sick or absent for various reasons, thus simply performing more menial job duties such as cashiering and stocking.

91.     Defendants are very cost conscious about eliminating the incurrence of overtime hours that it has to pay to its hourly employees, despite knowing that each Store Manager was being forced or required to work hours even as high as eighty (80) to ninety (90) per week in

Feldman Morgado, PA | 501 N. Reo Street | Tampa | Florida | 33609 | PH 813-639-9366

some cases, just to ensure that sufficient numbers of employees were working in its store locations across the nation.

92.     As a result, Defendants have engaged in a systematic practice of using and forcing its salaried Store Manager employees who do not receive overtime pay to work many hours in order to avoid having to pay its hourly employees for such overtime work.

93.     Plaintiffs, opt-in Plaintiffs and/or members of the putative class spent the majority of her time while employed performing menial job duties, which had nothing to do with managing the Defendants' stores or enterprise, as that term is defined and/or contemplated under the FLSA.

94.     The Defendants willfully violated and continue to violate §207 of the FLSA by failing to pay Plaintiffs, opt-in Plaintiffs and/or members of the putative class the proper overtime compensation for all hours worked in excess of forty (40) per week and by classifying each store manager, regardless of the store size, regardless of the store volume in revenues, as a whole class of executive exempt employees.

95.     Some Circle K stores were small island type booths in between gas pumps and during evening and early morning hours, were staffed by only one (1) employee and did not allow customers into the stores.

96.     Store managers frequently worked during some of their shifts without a single subordinate employee present, and frequently with only one other subordinate employee present.

97.     Upon information and belief, for the three (3) year period before this filing, (the "Class Period"), the continued violations of the FLSA §207 that are complained of herein have been practiced and imposed upon all Store Managers of Defendants' stores nationwide, who have regularly worked in excess of forty (40) hours per week.   There are more than

Feldman Morgado, PA | 501 N. Reo Street | Tampa | Florida | 33609 | PH 813-639-9366

approximately 3,300 stores nationwide, each modeled with uniformity and each with Store Managers.

98.     The FLSA provides, with certain exceptions, employers must pay employees overtime of at least one and one-half times their regular rate of pay for any hours over forty (40) worked in a week. 29 U.S.C. S 207(a)(1).  Although the FLSA provides for certain exemptions to the mandates of paying overtime compensation, no such exemption applies in the instant matter.

99.     Unless proven to be exempt from the protection of overtime laws, all employees are entitled to premium overtime pay for work in excess of forty (40) hours per week.

100.     Plaintiffs, opt-in Plaintiffs and/or members of the putative class were, and continue to be, required to work more than forty (40) hours a week during the course of their employment with Defendants.

101.     Plaintiffs herein allege on behalf of the members of the Class that Defendants' failure to pay overtime and other compensation was and is knowing and willful.  Accordingly, Plaintiffs, opt-in Plaintiffs and/or members of the putative class seek and are entitled to recover all overtime pay due from overtime hours worked for which compensation was not paid, liquidated damages, prejudgment interest, attorneys' fees and costs under the FLSA's three (3) year statute of limitations.

## FAILURE TO MAINTAIN TRUE & ACCURATE RECORDS OF HOURS WORKED

102.     Evidence reflecting the precise number of overtime hours worked by Plaintiffs and every other member of the Class, as well as the applicable compensation rates, is in the possession of Defendants.

103.     However, and to the extent records are unavailable, Plaintiffs, opt-in Plaintiffs and/or members of the putative class may establish the hours they worked solely by their testimony and the burden of overcoming such testimony shifts to the employer. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946).

104.     All employers subject to the FLSA must maintain and preserve certain records describing the wages, hours and working conditions of their employees.

105.     With respect to an employee subject to the minimum wage provisions the following records must be kept:

    a.  Personal information, including employee's name, home address, occupation, sex, and birth date if under 19 years of age;

    b.  Hour and day when workweek begins;

    c.  Regular hourly pay rate for any week when overtime is worked;

    d.  Total hours worked each workday and each workweek;

    e.  Total daily or weekly straight-time earnings;

    f.  Total overtime pay for the workweek;

    g.  Deductions from or additions to wages;

    h.  Total wages paid each pay period; and

    i.  Date of payment and pay period covered

106.     Failure to comply with the recordkeeping requirements is a violation of the FLSA for which criminal or civil sanctions may be imposed, whether or not other statutory violations exist. See, 29 U.S.C. § 215(a)(5); Also See, Dunlop v. Gray-Goto, Inc., 528 F.2d 792 (10th Cir. 1976).

Feldman Morgado, PA | 501 N. Reo Street | Tampa | Florida | 33609 | PH 813-639-9366

107.     Accurate records are not only required for regulatory purposes, they are critical to an employer's defense of claims it violated the Act.   An employer that fails to maintain the required records cannot avoid liability in a wage-hour case through argument that there is insufficient evidence of the claimed hours worked.   *See,* Wirtz v. First State Abstract Ins. Co., 362 F.2d 83 (8th Cir. 1966); Boekemeier v. Fourth Universalist Soc'y, 86 F. Supp. 2d 280 (S.D.N.Y. 2000).

108.     An employer's failure to maintain records may create a presumption in the aggrieved employee's favor. *See,* Myers v. The Copper Cellar Corp., 192 F.3d 546, 551 n.9 (7th Cir. 1999) , *citing* Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946).

109.     Defendants have failed to accurately record, report, credit and/or compensate its employees, including Plaintiffs and Class members' time records.

110.     Defendants have failed to make, keep and preserve records, with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of 29 CFR 516.2 and 29 U.S.C. §§ 211, 216 and related laws.

## COLLECTIVE ACTION ALLEGATIONS

111.     Plaintiffs bring this action on behalf of the Class, as a collective action pursuant to the Fair Labor Standards Act § 216(b).

112.     In Young v. Cooper Cameron Corp., the court stated that: "The requirements of Fed. R. Civ. P. 23 does not apply to the approval of a collective action and thus no showing of numerosity, typicality, commonality, and representativeness need be made." Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005)

113.     Still, despite the Young Court's ruling, the members of the Class are so numerous that joinder of all members is impracticable.   While the exact number of the members of the

Class is unknown to the Plaintiffs at this time, and can only be ascertained through appropriate discovery, the Plaintiffs believe that there are at a minimum hundreds of individuals in the defined class, if not thousands.

114.   Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel that is experienced and competent in class/collective actions and employment litigation.  Plaintiffs have no interest that is contrary to, or in conflict with, members of the Class.

115.   A collective action suit, such as the instant one, is superior to other available means for fair and efficient adjudication of this lawsuit.  The damages suffered by individual members of the Class may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Class to individually seek redress for the wrongs done to them.

116.   A collective action is, therefore, superior to other available methods for the fair and efficient adjudication of the controversy.  Absent these actions, the members of the Class likely will not obtain redress of their injuries and Defendants will retain the proceeds from its violations of the FLSA.

117.   Furthermore, even if any member of the Class could afford individual litigation against the Company, it would be unduly burdensome to the judicial system.  The instant methodology, when compared to voluminous individual actions, has fewer management difficulties and provides the benefits of unitary adjudication, economies of scale, and comprehensive supervision by a single court.  Concentrating this litigation in one forum will promote judicial economy and parity among the claims of individual members of the Class, and provide for judicial consistency.

Feldman Morgado, PA | 501 N. Reo Street | Tampa | Florida | 33609 | PH 813-639-9366

118.    There is a well-defined community of interest in the questions of law and fact affecting the Class as a whole.   The question of law and fact common to each of the Class predominate over any questions affecting solely individual members of the action.   Among common questions of law and fact are:

    a.   Whether Defendants employed members of the Class within the meaning of the applicable provisions of the FLSA;

    b.   Whether Plaintiffs and members of the Class were and/or are improperly classified as exempt pursuant to the protections of the FLSA;

    c.   Whether Plaintiffs and members of the Class were expected to, and/or mandated to regularly work hours in excess of forty (40) per week;

    d.   Whether Defendants knowingly failed to maintain and preserve accurate and true records of all hours worked and wages earned by the Class; and

    e.   Whether Plaintiffs and the Class have sustained damages, and if so, what is the proper measure of such damages.

119.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its continued maintenance.

120.    Pursuant to 20 U.S.C. § 207, Plaintiffs seek to prosecute the FLSA claims as a collective action on behalf of:

> All Store Managers across the nation who worked for Defendants as employees in the past three years preceding this lawsuit to the day of trial, and elect to opt-in to this action pursuant to FLSA, 29 U.S.C. § 216(b) and who worked in excess of forty (40) hours during one or more work weeks but were not paid overtime compensation for such time.

121.    Notice of the pendency and any resolution of this action can be provided to Collective Action Members by mail, print, and/or internet publication.

Feldman Morgado, PA | 501 N. Reo Street | Tampa | Florida | 33609 | PH 813-639-9366

## COUNT I – OVERTIME DUE UNDER THE FLSA

122.    Paragraphs 11 through 110 are realleged as if fully set forth herein.

123.    At all relevant times, Defendants employed Plaintiffs, and/or each member of the Class and/or continues to employ members of the Class, within the meaning of the FLSA.

124.    Defendants have a policy and practice of refusing to pay overtime compensation to Store Managers for the hours worked in excess of forty (40) hours per week.

125.    Defendants knowingly and willfully failed to pay Plaintiffs and all other members of the Class overtime compensation at the appropriate legal rate for all hours they performed work on behalf of Defendants above and beyond forty (40) hours per workweek in violation of the FLSA; in particular 29 U.S.C. §§ 206 and 207.

126.    Defendants knew that all store managers were working overtime without overtime compensation.

127.    Defendants knew that all store managers were primarily performing non-management duties.

128.    Defendants faced claims for overtime wages brought by a class of store managers in the state of California.  Defendants settled this claim for the entire class of California store managers and reclassified the store manager position only in California as Exempt.

129.    Defendants had reason to know that the store managers throughout the rest of the U.S. were likewise primarily performing non-exempt job duties and that the executive and administrative exemptions should not apply.

130.    Defendants continued to treat the store manager position in all states except California as exempt, despite the fact that the position was identical and run according to uniform and standardized practices.

Feldman Morgado, PA | 501 N. Reo Street | Tampa | Florida | 33609 | PH 813-639-9366

131.    Defendants failed to conduct studies or analysis of the job duties and work performed by the Store Managers after the California case was filed to assess or determine whether the position should be re-classified nationally as non-exempt.

132.    Defendants lack any good faith basis under the FLSA for continuing to treat the store manager position in all the rest of the states as exempt from the overtime wage provision of the FLSA.  Additionally, Defendants willfully continued, after the resolution of the California class action case and reclassifying the store manager position in California to non-exempt status, to misclassify the store manager position as exempt from overtime wages position for the rest of their U.S. stores.

133.    Upon information and belief, one or more Store Managers had filed claims against the Defendants for violation of the FLSA outside of California, and likewise were resolved or settled without Circle K reclassifying the position to non-exempt.

134.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

135.    Due to Defendants' FLSA violations, Plaintiffs allege on behalf of the members of the Class that they have suffered damages and are entitled to recover from Defendants the unpaid overtime compensation, and an additional equal amount as liquidated damages, prejudgment interest, reasonable attorneys' fees, costs and disbursements of this action, pursuant to 29 U.S.C. §216(b).

**WHEREFORE** Plaintiffs, Veronica Del Pilar Ruiz and Sagar Agaliya, pray for:

a.  An order designating this action as a collective action and issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals across the nation with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to §216(b) and that notice be sent to all past and present employees of Defendants at any time during the three year period

Feldman Morgado, PA | 501 N. Reo Street | Tampa | Florida | 33609 | PH 813-639-9366

immediately preceding the filing of this suit, through and including the date of this Court's issuance of the Court Supervised Notice;

b. An order awarding attorneys' fees and costs pursuant to § 216 of the FLSA;

c. That the Court find the Defendants in violation of the overtime compensation provisions of the FLSA and that the Court find that the Defendants' violations of the FLSA were and are willful;

d. That the Court award Ruiz and Agaliya and all similarly situated employees overtime compensation for all the previous hours worked over forty (40) hours that they did not receive at least one and one-half time compensation for, in any given week during the past three years, AND liquidated damages of an equal amount of the unpaid overtime compensation; in addition interest on said award pursuant to § 216 of the FLSA.

e. That the Court award Ruiz and Agaliya, a collective action representative fee for their efforts and time dedicated to bringing justice through this action; and

f. That the Court award any other legal and equitable relief as this Court may deem appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this Complaint and on all other issues so triable.

**Dated:  July 16, 2014**

Respectfully submitted.

**FELDMAN MORGADO, P.A.**

*/s/Dennis A. Creed, III*
Dennis A. Creed, III, Esq.
Fla. Bar No. 0043618
dcreed@ffmlawgroup.com
Bradley A. Tobin, Esquire

Feldman Morgado, PA | 501 N. Reo Street | Tampa | Florida | 33609 | PH 813-639-9366

Florida Bar No.:  0101818
btobin@ffmlawgroup.com
501 N. Reo Street
Tampa, Florida 33609
Ph: (813) 639-9366 / Fx: (813) 639-9376
*Attorneys for Plaintiffs.*